UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER G.,

                                            Plaintiff,

v.                                                            1:23-cv-0792
                                                              (GTS/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                            Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON PLLC        STEVEN R. DOLSON, ESQ.
6320 Fly Road, Suite 201
East Syracuse, NY 13057
Counsel for Plaintiff

SOCIAL SECURITY ADMINISTRATION              JOHANNY SANTANA, ESQ.
OFFICE OF THE GENERAL COUNSEL
6410 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

### I.    INTRODUCTION

Christopher G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant"), denying his applications for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").  Dkt. No. 1.  The matter was referred to the undersigned

for a report and recommendation by the Hon. Glenn T. Suddaby, United States District Judge,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).

Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18. Dkt. Nos. 7, 9. For the reasons set forth below, the Court recommends Plaintiff's motion for judgment on the pleadings be denied and Defendant's motion be granted.

## II.    BACKGROUND

Plaintiff was born in 1970, completed two years of college, and previously worked as a material handler. T. 15, 259, 296, 293, 366, 399.[1] He protectively filed his applications for DIB and SSI on June 9, 2020, and March 30, 2021, respectively. *Id*. at 248-68. Plaintiff alleged disability beginning January 15, 2016, due to diabetes mellitus, hypothyroidism, restless leg syndrome, high blood pressure, and hyperlipidemia. *Id*. at 249. His claims were initially denied on August 5, 2021, and upon reconsideration on October 27, 2021, after which Plaintiff requested a hearing before an Administrative Law Judge. *Id*. at 61-93, 94-109, 174-75.

Plaintiff appeared at a hearing before ALJ Brian LeCours on February 9, 2022. *Id*. at 26-60. On February 23, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. *Id*. at 10-17. On May 1, 2023, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1-9.

## III.    RELEVANT LEGAL STANDARDS

### A.    Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.

---

[1] The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system. Citations not made to the Administrative Transcript will use the page numbers assigned by the Court's CM/ECF electronic filing system.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision.  *See Rutherford*, 685 F.2d at 62.

B.     **Standard for Benefits**

To be considered disabled, a plaintiff seeking disability benefits must establish he or she

is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

423(d)(1)(A).  Additionally, the claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).[2]  The Social Security Administration regulations outline a five-step

process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her past
> relevant work despite the impairment; and (5) whether there are
> significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess*, 537 F.3d at 120; 20 C.F.R.

§§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant bears the burden of proof regarding

the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If the claimant meets his

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for
establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d),
are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of
Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working. *Id*.

## IV.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. T. 10-17. At step one, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 21, 2021, and has not engaged in substantial gainful activity since January 15, 2016, the alleged onset date. *Id*. at 12. Proceeding to step two, the ALJ determined Plaintiff has the following severe impairments: "diabetes mellitus with neuropathy; bilateral (sic) hypothyroidism; and obesity." *Id*. at 13. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id*.

The ALJ next determined Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with additional limitations.[3] *Id*. The ALJ found Plaintiff could occasionally climb ramps and stairs, occasionally climb one-to-two steps of a stepladder, and never climb ladders, ropes, or scaffolds. *Id*. Plaintiff could also occasionally perform overhead reaching bilaterally. *Id*. At step four, the ALJ determined Plaintiff could not perform his past relevant work. *Id*. at 15-16. At step five, based on the testimony of the vocational expert, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy such as

---

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c) and 416.967(c).

package hander (medium exertional level), kitchen helper (medium exertional level), routing clerk (light exertional level), cafeteria attendant (light exertional level), addresser (sedentary exertional level), and table worker (sedentary exertional level). *Id*. at 16-17.

Accordingly, the ALJ determined Plaintiff was not disabled, as defined by the Social Security Act, from the alleged onset date, January 15, 2016, through the date of decision, February 23, 2022. *Id*. at 17.

## V.    DISCUSSION

Plaintiff argues the ALJ "committed reversible error by interpreting raw medical data in the form of EMG/nerve conduction studies to formulate the residual functional capacity finding, which, as a lay person he was not qualified to do." Dkt. No. 7 at 5. In response, Defendant argues substantial evidence supports the ALJ's RFC determination that Plaintiff, though limited by his physical impairments, could perform medium work with additional limitations. Dkt. No. 9 at 5.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ. *Id*. §§ 404. 1527(d)(2), 416.927(d)(2); *see Curry v. Comm'r Soc. Sec.*, 855 F. App'x 46 (2d Cir. 2021) ("An RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear."). In general, the ALJ is obligated to formulate Plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical

source. *Id*. §§ 404.1527, 404.1527, 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate the existence of functional limitations that preclude any substantial gainful activity. *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c); *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (ultimately, it is plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ).

In making the RFC determination, the ALJ stated he considered all of Plaintiff's symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR16-3p. T. 13. The ALJ further stated he considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. *Id*. The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to produce some of his alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. at 14.

Here, Plaintiff's sole argument is that the ALJ erred in relying on his own lay opinion and inappropriately interpreting raw medical data in the form of EMG/nerve conductions studies when determining the RFC. Dkt. No. 7 at 5-9.[4] However, in finding Plaintiff capable of medium work with additional limitations, the ALJ did not merely rely on his own assessment of

---

[4] Since Plaintiff has not raised any other issues regarding the ALJ's decision including his evaluation of the opinion evidence, the medical evidence as a whole, Plaintiff's complaints, the other aspects of the RFC, and any other issues are deemed waived. *See* General Order 18.C(1)D.

the record.  He relied on the opinions of a consultative examiner and two state agency medical

consultants.  T. 14-15.

In July 2016, Plaintiff was consultatively examined by Dr. Kidd.  *See id*. at 514-17.

Plaintiff reported a history of diabetes, migraines, and hypertension.  *Id*.  He also complained of

"neuropathy of the hands and feet" and reported his symptoms are "more significant" in the

lower extremities compared to the upper extremities.  *Id*.  He also described a sense of

"weakness."  *Id*.

Upon examination, Plaintiff appeared to be in no acute distress.  *Id*. at 515.  He had a

normal gait and stance, could walk on his heels and toes without difficultly, and squat fully.  *Id*.

Plaintiff used no assistive devices, needed no help changing for the examination or getting on

and off the exam table, and was able to rise from a chair without difficulty.  *Id*.  Plaintiff had full

range of motion in the cervical and lumbar spine, elbows, forearms, wrists, hips, knees, and

ankles, and negative SLR bilaterally.  *Id*. at 516.  He had diminished range of motion in the

shoulders, but his joints were otherwise stable and nontender.  *Id*.  Deep tendon reflexes were

physiologic and equal in the upper and lower extremities, no sensory deficits were noted, and

strength was 5/5 in the upper and lower extremities.  *Id*.  His hand and finger dexterity were

intact and grip strength was 5/5 bilaterally.  *Id*.  The remainder of the examination was

unremarkable.  *See id*. at 515-16.

Dr. Kidd diagnosed Plaintiff with history of carpal tunnel syndrome; type II diabetes;

neuropathy of the upper and lower extremities; hypertension; and migraine headaches.  *Id*. at

517.  His prognosis was stable.  *Id*.  Based on this examination, Dr. Kidd opined Plaintiff has

mild limitations for prolonged walking, standing, squatting, bending, lifting, and carrying, and

marked limitations for overhead reaching.  *Id*.  The ALJ found Dr. Kidd's opinion persuasive

because it was "supported by the objective findings during the evaluation and consistent with the record as a whole." *Id*. at 15.

In addition to Dr. Kidd's opinion, Dr. Perrotti reviewed the record in August 2021 and provided a medical source statement. *Id*. at 61-72. Based on the record available at the time, which included Dr. Kidd's examination and opinion, Dr. Perrotti opined Plaintiff had no exertional limitations. *Id*. at 67. Dr. Perrotti also assessed some postural and manipulative limitations. *Id*. at 67-70. Specifically, Plaintiff could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally reach overheard bilaterally. *Id*. Dr. Seok reviewed the record in October 2021, and affirmed Dr. Perrotti's opinion. *Id*. at 102-04.

The ALJ found the opinions of Drs. Perrotti and Seok persuasive, but also found "that Dr. Kidd's opinion, the EMG/nerve conduction studies, and the claimant's complaints of shoulder pain to suggest at least some limitation in the claimant's exertional capacity. Accordingly, I have incorporated appropriate limitations at arriving at the established residual functional capacity." *Id*. at 15.

According to Plaintiff, "the above statement shows the Administrative Law Judge was not just analyzing a medical record to determine if a particular opinion was supported, but rather engaged in an interpretation of raw medical data to formulate the residual functional capacity finding." Dkt. No. 7 at 6. The Court is not persuaded by this argument.

First, the ALJ's consideration of the EMG/nerve conduction studies along with the longitudinal record was proper. *See Michael C. v. Comm'r of Soc. Sec.*, No. 1:21-CV-746 (ATB), 2022 WL 21852888, at *12 (N.D.N.Y. Aug. 24, 2022) (rejecting plaintiff's argument that the ALJ improperly relied on his own lay opinion when he compared findings from a recent MRI report and a nerve conduction study with the postural and exertional limitations opined by a

treating physician); *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0677 (WBC), 2021 WL

3145694, at *4 (W.D.N.Y. July 26, 2021) ("Here, the ALJ did not draw medical conclusions;

instead, and pursuant to his statutory authority, the ALJ considered the medical and other

evidence in the record in its totality to reach an RFC determination.") (citing *Curry v. Comm'r of

Soc. Sec.*, 855 F. App'x 46, 48 n.3. (2d Cir. 2021)).  "There is a difference between analyzing

medical records to determine what the weight of the evidence supports and interpreting raw

medical data that would require the expertise of a physician or other trained medical source; the

ALJ is precluded from doing only the latter." *Michael C.*, 2022 WL 21852888, at *12 (citations

omitted).

    Second, "whether or not the ALJ interpreted the [EMG/nerve conduction studies], that

testing was not the only evidence the ALJ relied on when finding" Plaintiff could meet the

exertional demands of medium work. *See Edward M.C. v. Comm'r of Soc. Sec.*, No. 6:20-CV-

0644 (GTS), 2021 WL 3032692, at *5 (N.D.N.Y. July 19, 2021) (finding the ALJ did not rely on

his own lay opinion or interpret raw medical data inappropriately because he did not base his

findings solely on the MRI and other testing, but also on other objective evidence, including an

opinion from a physician); *Alice M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1122 (DEP), 2022 WL

833566, at *7 (N.D.N.Y. Mar. 21, 2022) ("Although plaintiff argues that the ALJ 'played doctor'

by relying on the findings in the MRI, that is simply not the case here, where the ALJ explicitly

relied on opinion evidence from medical sources, as well as her own assessment of all of the

evidence when formulating the RFC."); *cf. Jody L. W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-

1434 (DEP), 2022 WL 2237801, at *6 (N.D.N.Y. June 21, 2022) ("The ALJ's interpretation of a

lack of compression on the MRI as meaning plaintiff did not have radiating pain in her leg is a

clear example of an ALJ interpreting raw medical data to draw medical conclusions despite being unqualified to do so.").

Here, the ALJ relied on Dr. Kidd's opinion that Plaintiff had mild limitations for prolonged walking, standing, squatting, bending, lifting, and carrying.  T. 15, 517; *see Mark H. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1347 (ATB), 2020 WL 1434115, at *7 (N.D.N.Y. Mar. 23, 2020) (finding medical opinions assessing no physical limitations or mild physical limitations support an RFC for medium work) (collecting cases); *see also Tammy C.-J. v. Comm'r of Soc. Sec.*, 523 F. Supp. 3d 368, 376-77 (W.D.N.Y. 2021) ("Additionally, the limitations assessed by Dr. Balderman—that Plaintiff had mild limitations sustaining physical activities—is consistent with an RFC requiring medium work.").  Further, it is clear the ALJ relied quite heavily on the opinions of Drs. Perrotti and Seok when crafting the RFC,[5] although he found Plaintiff retained the RFC to preform medium work, an RFC more generous and restrictive than "no exertional limitations."  T. 14-15.  *See Stefanie F. v. Comm'r of Soc. Sec.*, No. 23-CV-00617-FPG, 2024 WL 2017316, at *4 (W.D.N.Y. May 7, 2024) ("As a general matter, where an ALJ imposes a limitation in [the] RFC that is more restrictive than the relevant medical opinions, there is no error and thus no grounds for remand with respect to that limitation.") (citation and internal quotation marks omitted); *Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (ALJ did not err in "occasionally deviating from consultative examiners' recommendations to *decrease* [plaintiff's] RFC based on other evidence in the record.").

---

[5]  Indeed the ALJ's postural and manipulative limitations largely mirrors that of the state agency consultants.  *See* T. 13 ("he can occasionally climb ramps and stairs; he can never climb ladders, ropes, or scaffolds (though he can occasionally climb 1-2 steps of a stepladder; and he can occasionally perform overhead reaching (bilateral limitation)").

"Nor was it improper for the ALJ to rely on the opinions simply because [Drs. Kidd, Perrotti, and Seok] issued them without having seen Plaintiff's [EMG/nerve conduction studies]." *Sheila W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01636 CJS, 2022 WL 4493926, at *9 (W.D.N.Y. Sept. 28, 2022) (citing *Frank T. v. Comm'r of Soc. Sec.*, No. 1:20-CV-500 (WBC), 2021 WL 3635212, at *4 (W.D.N.Y. Aug. 17, 2021) (rejecting argument that ALJ could not rely on examining and reviewing physicians because they did not review a complete record and did not review a treating opinion)); *see* Dkt. No. 7 at 5.[6]

Third, the ALJ's decision reflects adequate consideration of the record as a whole. As detailed in the Commissioner's brief, the ALJ acknowledged treatment notes reflecting poor compliance with medication, blood glucose monitoring, and diet. *Id*. at 14, 647, 650, 653, 657, 659, 663, 678, 682, 684, 687-88, 691, 709, 712, 715, 729, 735, 743, 753. The ALJ noted a "majority of evidentiary records reflect normal physical examinations without sensory deficits, gait, abnormities, or other objective findings." *Id*. at 14. For example, physical examinations documented full range of motion in his upper and lower extremities, normal reflexes and motor function, and intact sensation with no tremors present in the hands. *Id*. at 14-15, 405, 411, 419, 425, 435, 441, 447, 452-53, 470-71, 500-01, 523, 527, 535, 548, 554, 559-60, 576, 580, 584, 588, 596, 600, 604, 608, 649, 655, 661, 667, 672, 680, 694, 702, 707, 726, 730, 736, 743, 754, 765, 777. Indeed, Plaintiff was documented to have decreased sensation in the hands and decreased range of motion in the shoulders only a handful of times. *Id*. at 14-15, 422, 452, 554, 813.

---

[6] The EMG/nerve conduction studies were received after the administrative hearing. T. 384, 839, 844.

Plaintiff cites *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020), to assert the ALJ "must base [his] conclusion on *some* medical opinion," while simultaneously overlooking that the ALJ fully accounted for the opinions of Drs. Kidd, Perrotti, and Seok.  Dkt. No. 7 at 9.  Thus, contrary to Plaintiff's argument, "[t]his is therefore not a case in which the ALJ rejects all of the medical opinions in the record and proceeds to 'interpret raw medical data that would require the expertise of a physician or other trained medical source.'"  *Alissa G. v. Comm'r of Soc. Sec.*, No. 21-CV-305, 2023 WL 3060409, at *4 (W.D.N.Y. Apr. 24, 2023) (quoting *Paul V. v. Comm'r of Soc. Sec.*, No. 20-CV-6887, 2022 WL 2114799, at *4 (W.D.N.Y. June 13, 2022)).

Lastly, although Plaintiff suggests otherwise, the ALJ did not reject a treating source opinion nor was there a gap in the record.  Dkt. No. 7 at 6-9; Dkt. No. 9 at 14-17; *see Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (holding an ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (internal quotation marks and citation omitted)).  The ALJ had access to Plaintiff's medical records, as well as the opinions of Drs. Kidd, Perrotti, and Seok.  Plaintiff has not shown that he needs a more restrictive RFC finding than the one assessed by the ALJ, as is his burden.  *See Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d. Cir. 2009) (burden on the plaintiff to show that she cannot perform the RFC as found by the ALJ).

For these reasons, rather than interpreting raw medical data, the ALJ's analysis reveals to the Court the ALJ properly considered the opinion evidence together with the other evidence of record.  *See* T. at 13-17; *Trepanier*, 752 F. App'x at 79.  Remand is therefore not warranted.

## VI.  CONCLUSION

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) be **DENIED**, and it is further

**RECOMMENDED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) be **GRANTED**, and the Commissioner's decision be affirmed.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 20, 2024
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge